Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4055 | **DATE** | 10/23/2001 |
| **CASE TITLE** | Dianne Bebble vs. National Air Traffic Controllers et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION: Plaintiff's motion for attorneys' fees is granted in the amount of $5,280.00 [8-1]

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 24 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | 12 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 10/23/2001 date mailed notice | |
| KAM | courtroom deputy's initials | 01 OCT 23 PM 4: 50 | KAM | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

00-4055.012-MEV                                    October 22, 2001

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DIANNE BEBBLE,                          )
                                        )
                Plaintiff,              )
                                        )
        v.                              )
                                        )   No. 00 C 4055
                                        )
NATIONAL AIR TRAFFIC CONTROLLERS'       )
ASSOCIATION, NATIONAL AIR TRAFFIC       )
CONTROLLERS ASSOCIATION – LOCAL         )
ZAU, NATIONAL AIR TRAFFIC               )
CONTROLLERS' ASSOCIATION – C90          )
TRACON, NATCA VOICE, BRYAN              )
THOMPSON, Individually and as           )
Managing Editor of the NATCA Voice,     )
PETER JOHN WHIDDEN a/k/a NOVEMBER       )
YANKEE, TONY GREER, JEFF PARRISH,       )
ED MORRIS, BRIAN FALLON, ANNA VON       )
WERDER, WAYNE DOMBROSKI, MIKE           )
GATELEY, BILL SNYDER, AL SMITH,         )
KEN KLUGE, JIM POOLE, and BILL          )
SEAY,                                   )
                Defendants.             )

**DOCKETED**

**OCT 2 4 2001**

## MEMORANDUM OPINION

Before the Court is the plaintiff's Motion for Attorney Fees. For the reasons explained below, the motion is granted.

## Background

The facts of this case were described in our earlier opinion, and are as follows:

The plaintiff, Diane Bebble, was an employee of the Federal Aviation Administration ("FAA"), working as an Assistant Air

Traffic Manager at the Chicago Air Route Traffic Control Center in Aurora, Illinois when the events underlying the litigation occurred. The defendants are the national and local chapters of the National Air Traffic Controllers Association ("NATCA"), which is the union that represents the nation's air traffic controllers employed by the FAA; the NATCA Voice, the union's "official grassroots" publication; and several members and officials of NATCA or the NATCA Voice, including Jim Poole, the Regional Vice President for the Great Lakes Region of NATCA.

In May of 1999, the NATCA Voice published an article entitled "Ding Dong the Witch is Dead! Chicago's Deputy Diane Relieved of Duty," which portrays the plaintiff in an unflattering light (to put it mildly)[1] and criticizes her dealings with the union. See Notice of Removal, Exh. II(A). On August 4, 1999, the plaintiff filed this lawsuit in the Circuit Court of Cook County, Illinois, alleging libel, invasion of privacy, and intentional and reckless infliction of emotional distress. Id., Exh. I. On October 4, 1999, defendant Poole wrote a letter to the Division Manager of the FAA's Great Lakes Regional Office requesting that, in light of the pending litigation, the plaintiff's position be restructured to eliminate contact between her and NATCA's representatives. Id., Exh. II(B). The plaintiff alleges that as a result of this letter she was relieved of her duties as Assistant Air Traffic Manager at the center in Aurora. On May 8, 2000 she amended her complaint to add defendants, including Jim Poole, and to add claims, including, among other state law claims, one for interference with prospective economic advantage.

Defendants Poole and Smith ("removing defendants") removed the case to this court pursuant to 28 U.S.C. § 1441 on the ground that plaintiff's claim for interference with prospective economic advantage arises out of union activity protected by the Federal Labor-Management Relations Act, ("FLMRA") 5 U.S.C. § 7101, et seq. The plaintiffs filed this Motion to Remand arguing that the protection of the FLMRA is at most a defense to the plaintiff's claims, and thus, is insufficient to form the basis of removal to this court.

---

[1] Peppered with derogatory comments about the plaintiff, the article is rather misogynist in tone. For example, the article asserts that the plaintiff was "[u]ndoubtedly a product of the FAA's attempt to show that there is no glass ceiling for woman (sic) in this agency." The article moves on to a critique of her hemline, and further likens her to an "annoying little toy poodle, nipping at your ankles while you are busy trying to get something done....The kind where you just feel like kicking the thing across the room like some cheap 'nerf' football or rolling up a newspaper and swatting it across the nose." See Notice of Removal, Exh. II(A).

Bebble v. National Air Traffic Controllers' Assoc., 2001 WL 128241 (N.D. Ill. Feb. 7, 2001). This past February, we granted the plaintiff's motion to remand the case. The plaintiff now moves for an award of attorney fees incurred due to the removal of this action to federal court.

**ANALYSIS**

The plaintiff's motion is made pursuant to 28 U.S.C. § 1447(c), which provides in pertinent part, that "an order remanding [a] case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Although our original order remanding the case to state court did not include an award of fees, we nevertheless "retain jurisdiction to consider collateral matters after remand and ... attorney's fees may be awarded under a separate order." See Wisconsin v. Hotline Indus., Inc., 236 F.3d 363, 365 (7th Cir. 2000) (rejecting defendant's argument that district court had no jurisdiction to award attorney fees after it had remanded the case to state court).

In order to award attorney fees under section 1447(c), the district court is not required to find that the defendants removed the case in bad faith. Tenner v. Zurek, 168 F.3d 328, 329-30 (7th Cir. 1999). Instead, section 1447(c)

is a fee-shifting statute, entitling the district court
to make whole the victorious party. An opponent's bad
faith may strengthen the position of party that obtained
a remand, but it is not essential to an award, any more
than under the multitude of other fee-shifting statutes.

Garbie v. DaimlerChrysler Corp., 211 F.3d 407, 410 (7th Cir. 2000) (noting that improper removal prolongs litigation and "jacks up fees").

The defendants argue that fees are not warranted here because the defendant presented "a good faith argument for removal and a complex, substantial jurisdictional question." See Catellanos v. U.S. Long Distance Corp., 928 F. Supp. 753, 757 (N.D. Ill. 1996) (declining to award fees because the case involved complex issues, including the complete preemption doctrine). We disagree. As we noted in our memorandum opinion:

> The removing defendants [did] not identif[y] the elements
> of what they perceive to be [plaintiff's] claim for
> interference with a prospective economic advantage, much
> less explain[] which of these elements presents a
> substantial, disputed question of federal law. Instead,
> they assert[ed] repeatedly that a federal claim arises
> because [Poole's] conduct was protected by § 7102 of the
> FLMRA.

Bebble, 2001 WL 128241 at *3. This is an argument that Poole had a federal defense to the plaintiff's claim, which is clearly insufficient to support a petition for removal. See id., at *4 (citing case law). The defendants, however, assert that the complex question they argued was whether federal jurisdiction exists where the plaintiff's claims require interpretation of a collective bargaining agreement. We are puzzled as to why the defendants argue

this point; we found "specious" the defendants' argument that the collective bargaining agreement had any bearing on the plaintiff's claims. See id., at *3 n.5.

Moreover, an award of attorney fees is appropriate here because the defendants unnecessarily complicated the question of remand by making inconsistent arguments. In their Notice of Removal the defendants appeared to assert the complete preemption doctrine as a basis for removal. See id. at *2 (noting that the defendants cited removal cases where the complete preemption doctrine applied). As a result, the plaintiff's attorneys spent time briefing this question. In their response brief, the defendants' expressly disavowed any reliance on the complete preemption doctrine, but nevertheless made arguments suggesting that it would apply. The situation was sufficiently confusing that we commented on the inconsistencies in the defendants' presentation, see id., and the ambiguity created unnecessary work for everyone.

We hold that the plaintiff is entitled to an award of attorney fees under § 1447(c).

The next question is how much to award. Characterizing section 1447(c) as a fee-shifting statute, the Seventh Circuit has distinguished it from other statutes that authorize recovery of "reasonable" attorney fees. Hotline, 236 F.3d at 367. Instead, by allowing recovery of "any actual expenses, including attorney fees, incurred as a result of the removal," section 1447(c)

"contemplate[s] that the victor should recoup his full outlay... [and] 'be made whole.'" Id. (quoting Garbie, 211 F.3d at 411) (determining that attorneys for the State of Wisconsin would receive a proportional share of their salaries plus overhead costs rather than the prevailing market rate for their services). This is not to say that the district court is required to award whatever fees are demanded without inquiring into the reasonableness of those fees. Huffman v. Saul Holdings Ltd. P'ship, 262 F.3d 1128, 1134-35 (10th Cir. 2001) (finding that district court erred in granting a fee petition without conducting such an inquiry). The Tenth Circuit has observed:

> [T]he phrase "incurred as a result of removal" informs and narrows the meaning of "actual expenses, including attorney fees." Nothing in ... Hotline ... suggests that courts are compelled to award unreasonable, if actual, fees to plaintiffs who successfully obtain an order of remand. To be compensable, their fees must be actually "incurred," that is, they must reflect efforts expended to resist removal. As we said above, and repeat here, unreasonably high fees are not "incurred" as a result of removal; rather, excessive fee requests flow from, and accumulate by means of, improper billing practices, and will not be recoverable under § 1447(c).

Id. at 1135. Therefore, the district courts must conduct "some sort of reasonableness inquiry." Id.

The plaintiff has petitioned for attorney fees in the amount of $9,922.50, which represents 52.75 hours of work at the rate of $140.00 per hour, plus 7.25 hours of work at the rate of $350.00 per hour.

As an initial matter, we note that the hourly rate charged by Theodore Karavidas, $350.00 per hour, is excessive for the relatively routine work of reviewing the notice of removal, conferring with another attorney on the case, and reviewing drafts of the remand motion. See Chrapliwy v. Uniroyal, Inc., 670 F.2d 760, 767 n. 16 (7th Cir. 1982) (stating that "an attorney may be over-qualified for particular services which could reasonably be performed by a less skilled or experienced attorney ... [so that] it may be unreasonable to value the attorney's time at his regular billing rate" instead of at a lower rate). In addition, while some entries reflect that Karavidas performed "research," the petition does not state what issues he researched. See Williams v. State Bd. of Elections, 696 F. Supp. 1561-62 (N.D. Ill. 1988) (explaining that general entries regarding "research" make it impossible for the court to determine whether the work done was excessive). The petition also does not explain why a less experienced attorney could not have performed this research. Therefore, we reduce the rate to a reasonable one for an attorney supervising the routine work involved: $200 per hour.

As to number of hours worked, it is difficult to assess whether the time spent was excessive because the entries are not specific as to how much time was spent on particular work, nor is there a precise description of the work done. Instead, the description of the work performed is lumped together in one entry

for each date: "Review cases, research and preparation of Motion to Remand. 4.75." Plaintiff's Fee Petition; Cf. Williams, 696 F. Supp. at 1562-63 (criticizing fee petitions presented in this format). However, a few observations will guide our analysis.

First, because the defendants' Notice of Removal appeared to raise the issue of the complete preemption doctrine, it was reasonable for plaintiff's counsel to research and address this point in their Motion to Remand and accompanying brief. The plaintiff billed 30.75 hours reviewing the Notice of Removal, researching case law, conferencing, and drafting and revising the motion. Some work was clearly duplicative or unnecessary, for example, the Notice of Removal was reviewed three different times; the Motion to Remand was reviewed and revised two and three times. Having ourselves reviewed the final product, we believe that any more than 20 hours of work on the motion was excessive. We will apportion this as 18 hours at the rate of $140 per hour, and 2 hours at the rate of $200 per hour.

Second, because the defendants clearly disavowed reliance on the complete preemption doctrine in their Response brief, the plaintiff's reply brief was appropriately short, only 6 pages. It cited only two new cases. The 3.5 hours billed to review the defendants' response plus the 13.75 hours billed to prepare the reply brief are excessive for the work done. We will reduce the

number of compensable hours to 8 hours at the rate of $140 per hour, and 1 hour at the rate of $200 per hour.

Third, the plaintiff had the benefit of this court's opinion in drafting their Motion for Attorney Fees. Put simply, they did not have to start from scratch to show that the defendants' removal of the action was fatally flawed. The 12 hours of work on the motion seems to us excessive, especially because plaintiff's counsel did not even cite any of the three relatively recent Seventh Circuit cases discussing attorney fee petitions under § 1447(c). See Hotline, 236 F.3d at 367 (discussing the district court's jurisdiction to award fees under § 1447(c) after the case has been remanded); Garbie, 211 F.3d at 410 (characterizing § 1447(c) as a fee-shifting statute); Tenner, 168 F.3d at 329-30 (explaining that district court is not required to find bad faith). Of the twelve hours the plaintiffs billed on the Motion for Attorney Fees, we will deduct 2.5 hours for an entry that appears irrelevant to this action,[2] and will further reduce the compensable hours to 6 hours at the rate of $140 per hour, and 1 hour at the rate of $200 per hour.

---

[2] Two and a half hours are billed for work done to "edit/revise reply motion" on June 1, 2001. It is unclear what this refers to and whether it applies to this matter at all. It does not appear to be a projection of the amount of time expected to be spent on the reply brief.

**CONCLUSION**

For the reasons stated above, the Motion for Attorney Fees is granted in the amount of $5,280.

DATE:   October 23, 2001

ENTER:  _____
        John F. Grady, United States District Judge